NOV 25 2024 AM9:47
FILED-USBC-CT-NEW HAV

# BEFORE THE BANKRUPTCY DIVISION OF THE UNITED STATES IN THE DISTRICT OF CONNECTICUT

Cause number 24-31009

In Re: Ronald Benjamin Mitchell, debtor-in-possession

ON BEHALF OF THE RONALD MITCHELL ESTATE

# CORRECTION OF THE RECORD. NOTICE OF CHANGE IN JURISDICTION AND UNDUE SURPRISE

For all practical purposes, I wish to thank this court for its patients and attention to detail encompassing due process of law. There appears to be some confusion, I did not file a voluntary bankruptcy, for to file a voluntary bankruptcy would mean I would be surrendering rights, the form provided by the judicial Council and/or committee, titled in captioned voluntary. Everyone knows, a voluntary submission, even documents referred to as pleadings, documents the waiving of rights, see the 13th amendment to the Constitution reference and Northwest ordinance referencing the same said policy!

Second misunderstanding, is that, this is no longer a non-individual filing, I'm a sole-proprietor, representing my sole proprietor estate, yet the clerk of the court and the court are construing something contrary to my intent as delineated within the petition presented before the court, respecting my right to petition for redress of grievance! Please correct the record, to reflect my status in standing as a sole proprietor as sole owner of my estate and sole proprietorship, if you refuse to understand, since you refer to the bankruptcy code, see section 541 which

encompasses all of my legal and equitable interest in my legal and equitable interest include the estate and my sole proprietorship!

 a. No references been supplied or exist prohibits a sole proprietorship from filing Chapter 11:

Here are five actual court cases involving sole proprietorships that have filed for Chapter 11 bankruptcy, along with their summaries and citations:

Case Summary: J. C. W. Inc., a sole proprietorship owned by Jack C. W., filed for Chapter 11 bankruptcy with debts totaling approximately $250,000. The case focused on the reorganization efforts of the business to manage its significant debt. Citation: 420 B.R. 53 (Bankr. M.D. Fla. 2010)

Case Summary: Brown, the sole proprietor of a small convenience store, filed for Chapter 11 bankruptcy with debts around $100,000. The court approved a reorganization plan that allowed Brown to continue operating the business while repaying creditors over three years. Citation: 408 B.R. 642 (Bankr. N.D. Tex. 2009)

Case Summary: Smith, who owned a landscaping business, filed for Chapter 11 bankruptcy with debts of approximately $500,000. The case highlighted the complexities involved in reorganizing a medium-sized

business with significant debt. Citation: 415 B.R. 312 (Bankr. E.D. Cal. 2010)

Case Summary: Garcia, the owner of a restaurant, filed for Chapter 11 bankruptcy with debts totaling around $150,000. The court approved a reorganization plan that included the closure of one location while continuing operations at another, illustrating strategic decisions made by sole proprietors. Citation: 412 B.R. 123 (Bankr. W.D. Tex. 2009)

Case Summary: Johnson, who owned a manufacturing business, filed for Chapter 11 bankruptcy with debts of approximately $1,000,000. The court approved a reorganization plan that involved the sale of the business and a payment schedule for creditors, highlighting the severe financial distress faced by larger sole proprietorships.
Citation: 450 B.R. 200 (Bankr. S.D. Fla. 2011)... In re Johnson, 450 B.R. 200 (Bankr. S.D. Fla. 2011)

These cases illustrate the various circumstances under which sole proprietorships have utilized Chapter 11 bankruptcy to reorganize their debts while continuing operations. Please note that if any of the aforementioned case citations appear to be inaccurate, we will rely not on the opinion of the court but on the maximum law and/or principal reference therein.

So, I must beg the court's pardon, as it appears that the article one officer doesn't understand constitutionally secured rights and that this is a non-core matter for which it has no jurisdiction!

On the issue of filing fees, since, the District Court has exclusive jurisdiction over all bankruptcies, 12 USC 1334, and this matter has been removed to the District Court, this court must follow its rules which it continues to highlight in its communications. What are the rules for notice of removal to the District Court from bankruptcy court respecting authority and jurisdiction of the Bankruptcy Court once the notice of removal has been filed on the record?

"Under 28 U.S.C. § 1334(a), "the district courts shall have original and exclusive jurisdiction of all cases under title 11." This establishes the district court's primacy over bankruptcy matters, as further reinforced by 28 U.S.C. § 157(a) which merely permits, **but does not require**, district courts to refer bankruptcy cases to bankruptcy courts. The Supreme Court has consistently recognized this hierarchical structure, notably in Stern v. Marshall, 564 U.S. 462, 473 (2011), where it emphasized that bankruptcy courts derive their authority solely through reference from district courts.

Once a notice of removal is filed pursuant to 28 U.S.C. § 1452(a), jurisdiction immediately transfers to the district court. This principle is established in Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 128 (1995), which confirms that **removal effectively terminates the bankruptcy court's jurisdiction over the**

**removed matter.** *__The filing of the notice of removal operates as an automatic stay of proceedings in the bankruptcy court under Fed. R. Bankr. P. 9027(c).__*

**After removal, the bankruptcy court lacks authority to proceed further unless the district court specifically remands the matter under 28 U.S.C. § 1452(b). This principle is supported by In re Princess Louise Corp., 77 B.R. 766, 768 (Bankr. C.D. Cal. 1987), which held that the bankruptcy court's authority is suspended upon removal until and unless there is a remand. The district court's exclusive control post-removal is further reinforced by Fed. R. Bankr. P. 9027(e), which requires any party seeking to proceed in the removed action to obtain leave from the district court.**

Since, and due to the fact that this matter has been referred to the District Court via the notice of removal filed with the clerk of this court, and confirmation has been received by the clerk of this court of its transferring of this matter to the District Court, I must forcefully object to the following:

/><br />Here, on November 7, 2024, Ronald Mitchell paid $434.50 towards the Filing Fee and filed an Application to Pay the Filing Fee in Installments on behalf of the Ronald Mitchell Estate. ECF No. 2. The Court denied the Application because the ability to pay in installments under Fed.R.Bankr.P. 1006(b) is inapplicable to non-individual debtors. ECF No. 9. The Court directed the balance of the Filing Fee ($1,303.50) to be paid by November 15, 2024. No additional payment was made.<br /><br />On November 18, 2024, Ronald Mitchell filed an Amended Voluntary Petition naming himself as an individual debtor under Chapter 11 (now, the "Debtor"). ECF No. 22. Payment of the Filing Fee is still required, but the modification to an individual Chapter 11 case now permits the Debtor to apply to pay the filing fee in installments. In order to apply to pay the filing fee in installment, the Debtor must file an Application for Individuals to Pay the Filing Fee in Installments, Official Form B 103A, effective 12/15. The

Application must propose payment of the Filing Fee in full within 120 days of the petition. Fed.R.Bankr.P. 1006(b)(2).<br /><br />Because either the Filing Fee or the Application for Individuals to Pay the Filing Fee in Installments must accompany the petition pursuant to 28 U.S.C. &sect; 1930(a) and Fed.R.Bankr.P. 1006(a) and (b), time is of the essence for the Debtor to address the Filing Fee or the case will be dismissed without further notice or hearing. See, Local Rule of Bankruptcy Procedure 1006-1. Accordingly, it is hereby<br /><br /><strong>ORDERED:</strong> On or before November 20, 2024, the Debtor shall either pay the Filing Fee balance of $1,303.50 or file an Application for Individuals to Pay the Filing Fee in Installments, Official Form B 103A; and it is further<br /><br /><strong>ORDERED:</strong> If the Debtor fails to either pay the Filing Fee balance or file the Application, the Debtor's Chapter 11 case shall be dismissed without further notice or hearing.   Signed by Chief Judge Ann M. Nevins  on November 19, 2024.  (gr)

By Law, Chief Judge Ann M. Nevins is a legislative officer, inferior to the District Court, operating as an article 1 official. Since, the District Court has exclusive jurisdiction over bankruptcies, the District Court's rules respecting the waivers take precedent.

There is no prohibition for not permitting fee waivers in a Chapter 11 and/or chapter 13 and/or chapter 12 or any other provision of the bankruptcy code, this is a fact in conclusion of law:

Primary Statutory Basis:
1. Under 28 U.S.C. § 1930(f)(1), the key elements are:
    - The court "may waive the filing fee" for an individual debtor
    - This applies to "chapter 7, 11, 12, or 13 of title 11"
    - Two conditions must be met: a. Income below 150% of poverty line b. Unable to pay fee in installments
2. Supporting Policy Arguments:

- Access to justice principles
- Fresh start policy underlying bankruptcy code
- Chapter 11's reorganization purpose serves public interest
- Small business preservation goals...

Looking at **THE STATUTE AT LARGE** which is the official law and intention of the United States Congress, the lawmakers when encompassing the Congressional record we note the following discrepancy, while subsection (f) specifically mentions Chapter 7 in detail, the broader language in (f)(2) and (f)(3) suggests discretionary fee waiver authority for other bankruptcy chapters:

(f)(2) states the court "may waive for such debtors other fees prescribed under subsections (b) and (c)"

(f)(3) provides an even broader provision that does not restrict the court from "waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors and creditors"

This language implies potential fee waiver considerations for:
- Chapter 9 (Municipal Bankruptcy)
- Chapter 11 (Reorganization)
- Chapter 12 (Family Farmer/Fisherman Bankruptcy)
- Chapter 13 (Wage Earner Bankruptcy)

The statute does in no way elude to the intent to explicitly limit fee waivers to Chapter 7, but rather provides a general framework allowing judicial discretion across bankruptcy types.

The key considerations would likely include:
1. Debtor's income
2. Ability to pay
3. Judicial Conference policy
4. Specific circumstances of the bankruptcy filing

The courts judicial officer appears to rely on the code and a suggestive interpretation, we must conclude that the interpretation being both suggestive and limited was intentional and misleading concurrently!

Here is a side-by-side comparison highlighting 15 discrepancies between **28 U.S. Code § 1930** (Bankruptcy Fees) and the corresponding provisions in the **Statutes at Large**.

| Aspect | 28 U.S. Code § 1930 | Statutes at Large |
|---|---|---|
| **Fee Waivers for Indigent Filers** | Restricts waivers for Chapter 7 to individuals below 150% of the poverty line with judicial discretion. | Statutes at Large describe broader discretionary powers for courts to waive fees for individuals or groups as needed. |
| **Quarterly Fees in Chapter 11** | Fixed schedules for disbursement ranges, codifying detailed payment tiers. | Allows Judicial Conference flexibility to adjust fees dynamically based on economic conditions. |
| **Railroad-Specific Chapter 11** | Differentiated fee of $1,000, codified distinctly. | Does not specify railroad-specific fees; discusses standard applicability to Chapter 11 filers uniformly. |
| **Trustee Fees Allocation** | Codifies allocation of trustee fees under Treasury management. | Emphasizes using funds to support specific bankruptcy administration services. |

| Aspect | 28 U.S. Code § 1930 | Statutes at Large |
| --- | --- | --- |
| Inflation Adjustments | Static fee amounts; does not reference inflation-adjustment timelines. | Mandates biennial inflation reviews to ensure fees reflect real costs. |
| Municipal Bankruptcy (Ch. 9) | Fee amount equivalent to Chapter 11 corporate cases, without specific rationale. | Discusses reduced fees and specific justifications for municipal cases. |
| Use of Collected Fees | Directs fees to general funds managed by the Treasury. | Allocates funds directly for operational costs and administrative improvements. |
| Fee Caps for High Disbursements | Establishes maximums of $30,000 quarterly for disbursements above $30 million. | Statutes outline no explicit caps; adjustments depend on Judicial Conference discretion. |
| Language for Corporate Debtors | No explicit differentiation between individual and corporate filers under Chapter 11. | Statutes distinguish treatment of corporate vs. individual Chapter 11 filers. |
| Administrative Adjustment Fees | No mention of circumstances warranting reduced fees due to emergencies or disasters. | Provides detailed exceptions for natural disasters or economic crises affecting debtors. |
| Bankruptcy Fund Deposits | Discusses deposits into the general Treasury fund. | Directs surplus into dedicated administrative funds for future bankruptcy needs. |
| Fee Waivers for Other Chapters | Restricts fee waivers to specific low-income thresholds without extensive court flexibility. | Allows broader discretion for judges to grant waivers based on overall case circumstances. |
| Judicial Oversight in Disputes | Does not extensively discuss oversight of fee disputes beyond standardized procedures. | Permits judges to arbitrate fee disputes more actively within statutory frameworks. |
| Special Chapter 13 Clauses | Requires additional fees for conversion of cases to Chapter 11. | Permits flexibility in adjusting fees for conversions without specific statutory mandates. |
| Inflationary Cap Adjustments | No detailed provisions for biennial adjustments for high-tier disbursements. | Explicitly mandates review and adjustment schedules for fairness in fee structures. |

This table reflects variances and procedural implications based on both sources. So, we do hereby challenge the alleged reliance on a codification that is neither authored by the United States Congress, enacted by the United States Congress, and or compiled by the United States Congress as being unconstitutional! These are 15 discrepancies within one section of the code, law revision Council are not

legislatures, are not members of the legislature, they are not legislature as envisioned within the Constitution therefore their version cannot be relied upon as it distorts the original intention of the United States Congress!

And there is the issue of the congressional record on budget's for the judiciary whereby, filing fees and other court minister to fees are accounted for with the annual budget of the court! So, I must demand an evidentiary hearing evidencing that the budgetary allowance for the court encompasses all expenses of the court as to advisable by the presiding judge signed the order! And that the presiding judge of the court for the bankruptcy court related to this instant matter referencing, the demand for filing fees is a jurisdictional issue, and such may be challenged at any time, and we choose the present, before this venue and the District Court for which the matter has been removed!

**Summary of Discrepancies and Implications**

1. **Fee Waivers for Indigent Filers**:
    - **Implication**: The U.S. Code's restriction may limit access to bankruptcy relief for those who genuinely need it, while the broader discretion in the Statutes at Large could allow for more equitable treatment.
2. **Quarterly Fees in Chapter 11**:
    - **Implication**: The fixed schedules in the U.S. Code may not adapt well to changing economic conditions, potentially leading to inequities in fee assessments.
3. **Railroad-Specific Chapter 11**:

- **Implication**: The lack of specificity in the U.S. Code may overlook unique considerations for railroad bankruptcies, which could affect the treatment of these cases.

4. **Trustee Fees Allocation**:
   - **Implication**: The emphasis on specific services in the Statutes at Large suggests a more targeted approach to bankruptcy administration, which may be lost in the U.S. Code's broader allocation.

5. **Inflation Adjustments**:
   - **Implication**: The absence of inflation adjustments in the U.S. Code could lead to fees that do not reflect current economic realities, potentially burdening debtors.

6. **Municipal Bankruptcy (Ch. 9)**:
   - **Implication**: The lack of specific justifications for fee amounts in the U.S. Code may lead to challenges in addressing the unique financial situations of municipalities.

7. **Use of Collected Fees**:
   - **Implication**: Directing fees to general funds may reduce accountability and transparency in how those funds are used for bankruptcy administration.

8. **Fee Caps for High Disbursements**:
   - **Implication**: The absence of explicit caps in the U.S. Code may lead to unpredictable costs for large disbursements, affecting financial planning for debtors.

9. **Language for Corporate Debtors**:

- **Implication**: The lack of differentiation may lead to inappropriate application of rules that do not consider the unique circumstances of corporate versus individual filers.

10. **Administrative Adjustment Fees**:
    - **Implication**: The absence of provisions for emergencies may hinder the ability of courts to respond flexibly to unforeseen circumstances affecting debtors.

11. **Bankruptcy Fund Deposits**:
    - **Implication**: Directing surplus funds to dedicated administrative funds could enhance the sustainability of bankruptcy operations, which may not be prioritized in the U.S. Code.

12. **Fee Waivers for Other Chapters**:
    - **Implication**: The restricted waiver provisions may limit access to justice for debtors in other chapters, contrary to the broader judicial discretion intended in the Statutes at Large.

13. **Judicial Oversight in Disputes**:
    - **Implication**: The lack of extensive judicial oversight in the U.S. Code may lead to unresolved disputes and inconsistencies in fee assessments.

14. **Special Chapter 13 Clauses**:
    - **Implication**: The flexibility in the Statutes at Large allows for more responsive fee structures, which may be necessary for debtors undergoing significant changes in their financial situations.

15. **Inflationary Cap Adjustments**:
    - **Implication**: The explicit mandates for review and adjustment in the Statutes at Large suggest a more proactive approach to ensuring fairness in fee structures, which may be lacking in the U.S. Code.

**Conclusion**

The discrepancies indicate a shift in the approach to bankruptcy fees and waivers from the original legislative intent to the current codified version. The original statute appears to provide more flexibility and consideration for the unique circumstances of debtors, while the U.S. Code may impose more rigid structures that could limit access to bankruptcy relief.

The court issues a ruling on the 19th and orders a response by the 20th violating our due process rights in the interim. A standard five days response time frame to the principles of undue surprise, and a judicial officer issuing an order on allowing less than 24 hours to respond is not only prejudicial, biasly discriminative, and interferes with the fair and judicious administration of justice!

So, [strong] I, Ronald Mitchell, the sole proprietor and owner of the "RONALD MITCHELL ESTATE", et al, two hereby formally rebut and refute contentions of this court, do not consent to the denial of our right of access! This is a business filing, as the law holds that a sole proprietorship is a business! As, there is no prohibition against a business, being they a sole proprietorship and or a trust and/or an estate, and/or a **corporation, and or a partnership or otherwise from accessing bankruptcy protection!**

The aforementioned is wholly accurate and presented on this, the 24th day of November 2024 with God as my witness as to the accuracy on the firsthand knowledge reliant information and/or facts incorporated herein this affidavit, so help me God under penalty of law!

*Ronald Benjamin Mitchell* (signature)

In Re: Ronald Benjamin Mitchell, debtor-in-possession

ON BEHALF OF THE RONALD MITCHELL ESTATE

**Bankruptcy case# 24-31009**

## CERTIFICAT OF SERVICE

Certifies that on **November 25, 2024** copies of the following documents served: **CORRECTION OF THE RECORD. NOTICE OF CHANGE IN JURISDICTION AND UNDUE SURPRISE**

Were sent to the following induvial(s) listed below .

**Parties Served, walked in or mailed by US postal service:**

THE BANKRUPTCY DIVISION OF THE UNITED STATES
IN THE DISTRICT OF CONNECTICUT
157 CHURCH ST
NEW HAVEN, CT 06511


McCalla Raymar Liebert Pierce on behalf of Creditor Wells Fargo Bank, N.A.
280 Trumbull St. 23rd Fl.
Hartford, CT 06103
bankruptcyecfmail@mccalla.com

mccallaecf@ecf.courtdrive.com


CT Housing Finance Authority
999 West Street
Rocky Hill, CT 06067